UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
LUKE NASH,

                    Plaintiff,

        - against -

BOARD OF EDUCATION OF THE CITY OF
NEW YORK and THE CITY OF NEW YORK,

                    Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

99 Civ. 9611 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      In this action brought against defendants the City of New York (or "City") and the Board of Education of the City of New York ("BOE"), plaintiff Luke Nash, a former New York City probationary schoolteacher, brings claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 et seq., based on his 1998 termination. Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on a number of grounds, including the preclusive effect of a 2014 Decision and Judgment in Nash's Article 78 proceeding in state court, see Nash v. Weinberg, Index No.

20835/13 (N.Y. Sup. Ct. Kings Cty. Dec. 24, 2014) ("Nash II").[1]
For the following reasons, the motion is granted.

## I.   BACKGROUND

### A.   The Complaint

The following facts are drawn from the Complaint (or
"Compl."). Nash, a white male who was 44 at the time this
action commenced in 1999, had worked for the BOE on long and
short term per diem starting in 1983. Compl. ¶¶ 6, 11. On
September 2, 1997, BOE appointed Nash to a teacher position.
Id. ¶ 10. On or about February 23, 1998, Nash received a
"recommendation that his services as a teacher be discontinued."
Id. ¶ 13. Asserting that he had never received an
unsatisfactory performance appraisal during his BOE employment,
Nash contends that defendants maintained a policy of
transferring similarly situated black and Hispanic teachers, as
well as teachers under the age of 40, to other schools rather
than terminating them, and that he was terminated in violation
of "the applicable provisions for discipline of a teacher." Id.
¶¶ 14-15, 17. By September 1, 1998, he had sufficient length of
service so as to be entitled to tenure. Id. ¶ 12.

---

[1] This Decision and Judgment is attached as Exhibit A to the Declaration of
Assistant Corporation Counsel Joseph D. Lockinger in Support of the
Defendants' Motion to Dismiss the Complaint ("Lockinger Decl.").

**B.** **Initial Proceedings in This Action**

Initially represented by counsel, Nash commenced this action in September 1999, bringing claims for wrongful termination in violation of the ADEA, Title VII, the NYSHRL, the NYCHRL, and "applicable provisions for discipline of a teacher." With the parties' consent, this Court dismissed the case in October 2001 without prejudice to its re-opening following the conclusion of parallel state proceedings. We informed Nash in subsequent letters that we would permit him to re-open this case following the conclusion of his parallel administrative and state-court proceedings.

**C.** **First Hearing and Article 78 Proceeding**

Following his termination, it was recommended that Nash's teaching certification be terminated; that recommendation was reviewed through a hearing before the Chancellor's Committee in 2000. <u>See</u> Chancellor's Committee Recommendation, Plaintiff's Opposition to Defendant's Request to Dismiss Pursuant to Rule 12(b) ("Pl. Opp."), Ex. A. At that time, BOE regulations permitted the termination of teaching licenses and certifications where a teacher without tenure had engaged in behavior "which would pose a threat to the safety of students and staff." <u>Nash II</u>, Lockinger Decl., Ex. A at 4 (internal quotation marks omitted). According to the recommendation, Nash was charged with engaging in acts of corporal punishment during

the 1997-1998 school year; the Chancellor's Committee found that the preponderance of the evidence clearly warranted sustaining the specification that corporal punishment had occurred. Chancellor's Committee Recommendation, Pl. Opp., Ex. A at 2, 11. The Committee recommended that any and all teaching licenses held by Nash be terminated. Id. at 11.

In June 2001, Nash commenced an Article 78 proceeding in New York State Supreme Court challenging the Chancellor's decision to terminate his teaching licenses based on the Chancellor's Committee's Recommendation. Ultimately, the New York State Supreme Court held that Nash did not receive proper notice of the charges against him, rendering the license termination proceedings fatally defective, and remitted the matter to the BOE for it to conduct a hearing de novo. Memorandum Decision at 1, 3, Nash v. Levy, No. 22065/01 (N.Y. Sup. Ct. Kings Cty. Nov. 15, 2004) ("Nash I").[2]

**D.   Second Hearing and Article 78 Proceeding**

As set forth in Judge Bunyan's Decision and Judgment in Nash II, on February 27, 2013, the Chancellor's Committee conducted a review of the recommendation to terminate all of Nash's teaching certificates and licenses and his appeal of the "unsatisfactory" rating he had received for the 1997-1998 school

---

[2] Although Nash's submissions in opposition to defendants' motion refer to this decision in his initial Article 78 proceeding, the decision was not submitted to this Court. We have appended it to the copy of the Memorandum and Order mailed to Nash.

year.[3]  See Nash II, Lockinger Decl., Ex. A at 8.  Following a hearing, the Committee Chairperson recommended that Nash's unsatisfactory rating and the termination of licenses be sustained.  Id.  The Chairperson determined (1) that Nash had committed corporal punishment, (2) that Nash had failed to improve his classroom skills, and (3) that there was no compelling evidence presented to support Nash's claim that he had received unfair and biased treatment at the school.  Id.  A few months later, the Senior Deputy Chancellor sustained the recommendation of the Committee.  Id.

In November 2013, Nash again commenced an Article 78 proceeding in New York State Supreme Court.  His Amended Petition, dated March 31, 2014 ("Amended Petition"), sought, among other forms of relief, vacatur of the Senior Deputy Chancellor's determination that all of Nash's teaching licenses be terminated, restoration of his teaching license, withdrawal of the unsatisfactory rating, and reinstatement to his teaching position with back pay.  See Amended Petition, Amended Notice of Petition ¶¶ 1-6, Nash v. Weinberg, Index No. 20835/13 (N.Y. Sup. Ct. Kings Cty. Mar. 31, 2014), Lockinger Decl., Ex. B at 3; Amended Petition at pp. 10-14, Lockinger Decl., Ex. B at 13-17.

---

[3] A description of the events occurring during the period in between the 2004 Nash I decision and the 2013 hearing, including adjournments and rulings on motions for discovery, is set forth in Nash II at pages 6-8.

The Amended Petition raised numerous procedural challenges to the February 2013 hearing, including allegations that the New York City Department of Education ("DOE") had obstructed discovery and failed to produce relevant records. Id. ¶ 5, Lockinger Decl., Ex. B at 5-6. Nash asserted that the DOE's disciplinary actions against him and the Chancellor's Committee hearing had denied him due process, and that the recommendation of the Chairperson following the hearing was arbitrary and capricious. Id. at ¶¶ 19-33, Lockinger Decl., Ex. B at 9-12. Finally, the Amended Petition asserted that "[b]ased upon Petitioner's age, race, ethnicity, and presumed membership in a protected class," the DOE had taken hostile personnel actions against Nash, discriminated against him, and refused to orient him to the position of teacher; and, as a result of this bias, the DOE and United Federation of Teachers ("UFT") had jointly "fabricated" the corporal punishment allegations against Nash to stop paying him his salary in the spring of 1998. Id. ¶¶ 5-7, 10, Lockinger Decl., Ex. B at 6-7.

Citing "detailed observations" in reports prepared by the principal and assistant principal of Nash's former school describing Nash's "poor performance in the engagement of students, instruction, and lesson planning," in addition to the corporal punishment charges, Judge Bunyan held that there was a rational basis for the unsatisfactory rating. Nash II,

Lockinger Decl., Ex. A at 11.   Noting that the hearing officer was permitted to credit the accounts of the principal and the assistant principal regarding the basis for Nash's unsatisfactory rating and termination, Judge Bunyan also found that Nash had failed to demonstrate that the decision to terminate him was "done in bad faith" or "for a constitutionally impermissible purpose," and denied the petition to vacate the termination.   Id. at 11-12.   Finally, considering the record in the case, Judge Bunyan held that the decision to terminate Nash's teaching certificate was neither arbitrary nor capricious, and declined the remainder of the requested relief on the grounds that either Nash was not entitled to it or it was time-barred.   Id. at 13.   In August 2015, Nash informed this Court by letter that the New York State Supreme Court had denied his motion to re-argue on July 29, 2015.

**E.   Renewed Proceedings in This Action**

Approximately two weeks after the denial of his motion to re-argue, Nash, now acting pro se, requested that this case be re-opened.   The Court entered an Order on September 1, 2015, re-opening the case and directing defendants to file any amended answer or motion to dismiss within forty-five days.   Having filed an amended answer, defendants now move for judgment on the pleadings pursuant to Rule 12(c).   In addition to his opposition memorandum, Nash has submitted two letters dated February 23,

2016 (the "February 23 Letter"), and March 15, 2016 (the "March 15 Letter"), which we have also considered on this motion.

## II. LEGAL STANDARD

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). We thus construe the complaint liberally, accept its factual allegations as true, and draw all reasonable inferences in plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The assumption that allegations contained in the complaint are true is "inapplicable to legal conclusions." Id.

In evaluating the sufficiency of a complaint, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), as well as "matters of which judicial notice may be taken," Kramer v. Time Warner Inc., 937

F.2d 767, 773 (2d Cir. 1991).  We may take judicial notice of a "document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

### III. DISCUSSION

Defendants' arguments are (1) that the City is an improper defendant; (2) Nash's NYSHRL and NYCHRL claims are barred by the applicable statute of limitations; (3) Nash failed to exhaust his ADEA claim; and (4) all of Nash's claims are barred by the doctrines of res judicata and collateral estoppel.  In light of Nash's pro se status, we decline to treat his failure to respond to some of these points as concessions, and we construe his arguments liberally.  Smith v. City of New York, 130 F. Supp. 3d 819, 827 (S.D.N.Y. 2015).

### A.   The City is an Improper Defendant

Nash argues that the City is a proper defendant because it is responsible for the BOE and any successor agencies.[4]  However,

---

[4] The distinction between the BOE and the DOE is immaterial for purposes of this analysis.  "[F]ollowing the 2002 amendments to the Education Law, the BOE is now frequently referred to as the DOE, [but] the two are not entirely synonymous." Matson v. Bd. of Educ., 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J., dissenting in part and concurring in part) (citation omitted).  "Recourse for alleged wrongs committed by the BOE . . . remain redressable through suits against the BOE." Id.

it is well established that "[t]he City and the DOE are separate legal entities." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013); see, e.g., Perez v. City of New York, 41 A.D.3d 378, 379, 837 N.Y.S.2d 571 (1st Dep't 2007). Accordingly, the "City is not liable for the actions of the NYCDOE or its employees absent some action by the City itself," and "[c]ourts have consistently rejected the argument that teachers may sue the City on the basis of their employment by the NYCDOE." Williams v. City of New York, No. 12 CIV. 8518 (RJS), 2014 WL 1383661, at *8 (S.D.N.Y. Mar. 26, 2014), aff'd, 602 F. App'x 28 (2d Cir. 2015). This was true when Nash filed his Complaint against the BOE in 1999. See Campbell v. City of New York, 203 A.D.2d 504, 505, 611 N.Y.S.2d 248, 249 (2d Dep't 1994) ("[I]t is well-settled that the Board of Education and the City of New York are separate and distinct entities . . . ."). Defendants' motion to dismiss all claims against the City is granted.

## B.   The NYSHRL and NYCHRL Claims are Time-Barred

New York law provides for a one-year statute of limitations for discrimination claims against schools, school districts, and boards of education. N.Y. Educ. Law § 3813(2-b); see also Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 373, 880 N.E.2d 6, 10 (2007) (unambiguous statutory text demonstrates that one-year limitation in Education Law § 3813

(2-b) should govern discrimination claims against a school district); Sotomayor, 862 F. Supp. 2d at 249. The only date provided for any action taken against Nash in the Complaint is February 23, 1998, when he allegedly received a recommendation that his services as a teacher be discontinued. Compl. ¶ 13. Nash commenced this action in September 1999, over a year later. Accordingly, his NYSHRL and NYCHRL claims are time-barred.[5]

## C.   ADEA Exhaustion

A plaintiff may not bring an ADEA suit in a federal court unless he has timely filed his claim with the EEOC or an equivalent local agency. Gonzaga v. Rudin Mgmt. Co., No. 15-cv-10139 (CM), 2016 WL 3962659, at *4 (S.D.N.Y. July 20, 2016); see 29 U.S.C. § 626(d). However, "[n]o 'right-to-sue' letter is needed in ADEA cases." McPherson v. New York City Dep't of Educ., 457 F.3d 211, 214-15 (2d Cir. 2006). "ADEA plaintiffs may file suit in court at any time from 60 days after timely filing the EEOC charge until 90 days after the plaintiff receives notice from the EEOC that the EEOC proceedings are terminated." Francis v. Elmsford Sch. Dist., 442 F.3d 123, 127 (2d Cir. 2006) (brackets and internal quotation marks omitted).

Defendants contend that Nash failed to exhaust his ADEA claim. The Complaint alleges that Nash timely filed a charge of

---

[5] Although Nash does not raise a tolling argument, the filing of an EEOC charge likely does not toll his NYSHRL and NYCHRL claims against the BOE. See Cincotta v. Hempstead Union Free Sch. Dist., No. 15-cv-4821 (ADS)(AKT), 2016 WL 4536873, at *18 (E.D.N.Y. Aug. 30, 2016) (collecting cases).

discrimination with the EEOC and that on June 10, 1999, the EEOC issued a notice of right-to-sue letter. Compl. ¶¶ 4-5. That letter, attached to the Complaint, states that Nash's notice of right to sue was issued under Title VII and/or the Americans with Disabilities Act. Compl., Ex. A. With respect to the ADEA, the letter contains two boxes corresponding to (1) "[t]he EEOC is closing your case" and (2) "[t]he EEOC is continuing its handling of your ADEA case." Id. Both boxes are unchecked. Id. Defendants state that they have attempted to obtain a copy of Nash's EEOC charge from the EEOC, but have thus far been unsuccessful because the EEOC Boston Area Office that issued the right-to-sue letter no longer has the file for Nash's case. See Memorandum of Law in Support of Defendants' Motion for a Judgment on the Pleadings at 9 n.5.

We are inclined to infer from the right-to-sue letter that Nash did not timely file a charge of age discrimination with the EEOC. However, because defendants bear the burden of establishing a plaintiff's failure to timely exhaust his administrative remedies, "a court will not usually dismiss a claim for failure to timely file an EEOC charge unless such failure is apparent from the face of the complaint." Kane v. St. Raymond's Roman Catholic Church, No. 14-cv-7028 (AJN), 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015). Drawing all inferences in Nash's favor, the failure to exhaust is not clear

from the face of the Complaint and the right-to-sue letter, and
thus we do not dismiss the ADEA claim on exhaustion grounds.

## D.   <u>Res Judicata and Collateral Estoppel</u>

Defendants contend that all of Nash's claims are barred by
the ruling in <u>Nash II</u> under the doctrines of res judicata and
collateral estoppel.  Such defenses "may be analyzed on a Rule
12(c) motion where all the relevant facts are set forth in the
complaint and in matters of which the Court may take judicial
notice."  <u>U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-
Petrobras</u>, No. 98 CIV 3099 JGK, 2001 WL 300735, at *23 n.17
(S.D.N.Y. Mar. 27, 2001).   In considering these preclusion
arguments, the Court may take judicial notice of Nash's Amended
Petition in his second Article 78 proceeding and the New York
State Supreme Court's ruling in that proceeding.  <u>Id</u>.

### 1. Res Judicata

Under the doctrine of res judicata, "[a] final judgment on
the merits of an action precludes the parties or their privies
from relitigating issues that were or could have been raised in
that action."  <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S.
394, 398 (1981).  A defendant asserting res judicata must show
"that (1) the previous action involved an adjudication on the
merits; (2) the previous action involved the same adverse
parties or those in privity with them; and (3) the claims
asserted in the subsequent action were, or could have been,

raised in the prior action." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015) (brackets and internal quotation marks omitted). A claim that "could have been raised in the prior action" is precluded by a prior judgment if the new claim is "sufficiently related to the claims that were asserted in the first proceeding that it should have been asserted in that proceeding." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis omitted).

The first two requirements are met here. The Article 78 proceeding resulted in a final decision on the merits involving the same adverse parties. Further, this litigation concerns the "same transaction or occurrence," TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014); Nash's Article 78 proceeding also challenged the termination of his probationary employment in 1997-1998. Nonetheless, as defendants concede, Nash's discrimination claims are not entirely barred by res judicata. See Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987). ("[A] New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting injunctive or affirmative relief."). Because Nash could not have received damages for violations of his civil rights in Nash II, his claims for damages are not barred by res judicata. However, to the extent Nash seeks

14

reinstatement or injunctive or declaratory relief that was available in that proceeding, his claims for such relief here are barred.  See Leo v. New York City Dep't of Educ., No. 13 CV 2271 (RJD) (JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) ("[B]ecause reinstatement and removal from the ineligible list were remedies available in the Article 78 proceeding, Leo's claims for that relief are barred by res judicata.").

### 2. Collateral Estoppel

The doctrine of collateral estoppel bars relitigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (brackets and internal quotation marks omitted). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995). A judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment.

LaFleur v. Whitman, 300 F.3d 256, 272 (2d Cir. 2002); see also
Batyreva v. New York City Dep't of Educ., No. 07 CIV. 4544 (PAC)
(DF), 2008 WL 4344583, at *10 (S.D.N.Y. Sept. 18, 2008) (where
teacher had challenged her unsatisfactory ratings in Article 78
proceeding, she was precluded from relitigating discrimination
and retaliation issues raised and decided in that proceeding).

    To begin, defendants have met their burden of establishing
that the identical issues were previously decided.  The
Complaint challenges BOE's discontinuance of Nash's probationary
employment in 1998 on the ground that it was the result of age
and race discrimination.  In his Amended Petition, Nash alleged:

> Based upon Petitioner's age, race, ethnicity, and
> presumed membership in a protected class the DOE claims to
> have taken, or has taken, hostile Personnel acts against
> Petitioner.  Upon this Bias the NYC DOE and the UFT
> utilized the fabricated corporal punishment allegation to
> stop paying Petitioner his salary in the spring of 1998 and
> informed him that he would be arrested if he reported to
> work on a daily basis.

Amended Petition ¶ 7, Lockinger Decl., Ex. B at 6.  Judge Bunyan
explained that review of the DOE administrative decision was
limited to whether a determination "'was made in violation of
lawful procedure, was affected by an error of law or was
arbitrary and capricious or an abuse of discretion.'"  Nash II,
Lockinger Decl., Ex. A at 10 (quoting N.Y. C.P.L.R. § 7803(3)).
In upholding the decisions to impose an unsatisfactory rating,
terminate Nash's teaching license,  and terminate Nash's

probationary employment, Judge Bunyan reviewed the record before him, including "detailed observations in the reports prepared by the principal and assistant principal" concerning Nash's performance, the corporal punishment charges, and the testimony of the principal and assistant principal at the Chancellor's Committee hearing. Id. at 11-12. As to the termination specifically, Judge Bunyan explained that the DOE "'has the right to terminate the employment of a probationary teacher at any time and for any reason, unless the teacher establishes that the termination was for a constitutionally impermissible purpose, violative of a statute, or done in bad faith.'" Id. at 12 (quoting Frasier v. Bd. of Educ., 71 N.Y.2d 763, 765, 525 N.E.2d 725, 726 (1988)). Ultimately, Nash had "failed to demonstrate that the decision to terminate him was done in bad faith or was for a constitutionally impermissible purpose." Id. Concluding that it was well within the hearing officer's discretion to credit the principal and assistant principal's testimony concerning what transpired, Judge Bunyan denied so much of Nash's petition as sought to vacate his termination. Id. at 12-13.[6]

---

[6] We have not been provided with the record of the 2013 Chancellor's Committee hearing that recommended that Nash's unsatisfactory rating and termination of licenses be sustained. Nonetheless, given that Nash claimed that his termination was motivated by race and age both in his federal Complaint initiating this action prior to that hearing and in his Amended Petition in the Article 78 proceeding following that hearing, there appears to be no basis to conclude that he failed to raise those issues during the hearing.

Accordingly, not only did Nash raise the issue of discriminatory animus motivating his termination in the Article 78 proceeding, the state court necessarily rejected his claims of discrimination by concluding on the merits that he had not met his burden of establishing that the decision to terminate was made in bad faith or for unlawful reasons. Compare Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 787 (S.D.N.Y. 2003) (where Article 78 petitioner raised claims of discrimination and retaliation, "state court's determination that . . . decision to terminate him was supported by substantial evidence and that the penalty of dismissal did not 'shock our sense of fairness' . . . necessarily implied rejection of [petitioner's] claim that his termination was discriminatory and retaliatory"), and Rameau v. New York State Dep't of Health, 741 F. Supp. 68, 71 (S.D.N.Y. 1990) ("In the Article 78 proceeding, the plaintiff claimed that his dismissal was arbitrary, capricious, unlawful and made in bad faith because it was based on racial and ethnic discrimination. Had the state court found that the allegations of discrimination were supported by the facts it could not have found that plaintiff was properly discharged."), with Vargas v. City of New York, 377 F.3d 200, 206 (2d Cir. 2004) ("While it is true that

---

In Nash II, Judge Bunyan stated that the hearing officer had "found that there was no compelling evidence presented to support [Nash's] claim that he had received unfair and biased treatment at the school." Lockinger Decl., Ex. A at 8.

the Article 78 court passed upon the propriety of Vargas's termination, this acknowledgment does not demonstrate that the court 'actually and necessarily' decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination.").

In response, Nash does not dispute that he raised the issue of animus in the Article 78 proceeding, but appears to contend that previous litigation of his termination has been undermined by defendants' obstruction.  He asserts that his former school was closed and his school district was dissolved, and that this resulted in the destruction of records that rendered his 2013 Chancellor's Committee hearing meaningless.  Pl. Opp. at 2.  He accuses Corporation Counsel, DOE, UFT, and his attorneys of impeding discovery and destroying records.  Id. at 2, 5.  Nash also submits an affidavit wherein he avers that a DOE representative stated at the 2013 hearing that he had no records, including attendance records, of children who attended Nash's school or contact information for those children's parents.  In his March 15 Letter, Nash argues that UFT and DOE have jointly obstructed review of the role of the UFT at his school and have refused to identify the "complaining child" who testified against him in the 2000 Chancellor's Committee hearing and another complainant.  ECF. No. 26 at 3-4.

With respect to the assertions of collusion and intentional

obstruction, such conclusory allegations are insufficient to meet Nash's burden of showing that he did not have a full and fair opportunity to litigate in the Article 78 proceeding. As for the missing evidence such as school attendance records, Nash does not attempt to directly tie any such evidence to his discrimination claims. Moreover, it belies common sense to conclude that Nash, who was represented by counsel at his 2000 hearing, see Pl. Opp., Ex. A, filed discovery motions in the years leading up to the 2013 hearing, and was represented by counsel at that hearing as well, see Nash II, Lockinger Decl., Ex. A at 6-8, has not had the opportunity to seek relevant evidence. To the extent that records from 1998 are unavailable, we do not believe that undermines defendants' preclusion argument now. See Rahman v. Acevedo, No. 08 Civ. 4368 (DLC), 2011 WL 6028212, at *6 (S.D.N.Y. Dec. 5, 2011) (noting that "[plaintiff] cites to no case law that supports a finding that the degradation, loss, or unavailability of evidence is sufficient to deprive one of a full and fair opportunity to litigate an issue."). Finally, the same assertions related to obstruction of discovery and identification of complainants were raised in Nash's Amended Petition in connection with his claims that he had been denied due process and that the hearing officer's recommendation was arbitrary and capricious, see Amended Petition ¶¶ 19-21, 23, 27, 30, 33, Lockinger Decl., Ex.

B at 6-9, which claims Judge Bunyan denied, see Nash II, Lockinger Decl., Ex. A at 13.[7]   Nash cannot relitigate these evidentiary issues in this Court.   In sum, Nash fails to show that he did not have a full and fair opportunity to litigate the issue of discriminatory animus motivating his termination.[8]

Based on the preclusive effect of the Article 78 proceeding, all of Nash's discrimination claims must be dismissed.   To the extent that Nash separately alleges a claim for termination in violation of applicable state-law provisions for discipline of a teacher, see Compl. ¶¶ 55-57, we decline to exercise supplemental jurisdiction over that claim, assuming that one remains after the ruling in Nash II.

_____

[7] Although Nash suggests that the DOE has obstructed his attempts to identify the complainant, he refers to her by name, and she appears to have testified at the 2000 Chancellor's Committee hearing (although apparently on a day when Nash did not attend on advice of his attorney), see Pl. Opp., Ex. A at 3.

[8] Given Nash's pro se status, we have considered all of the arguments raised in his multiple submissions in response to defendants' motion.   We briefly address certain remaining arguments.   First, Nash has submitted a letter he styles as new evidence.   The letter, dated February 4, 2013, from a UFT representative and addressed to Nash, explains, inter alia, that Nash had refused to meet with his assigned UFT advocate in 1998 when UFT's Grievance Department had made the determination to go forward with arbitration in his case.   Pl. Opp., Ex. B.   As a result of Nash and his former privately retained attorney refusing to meet with his assigned UFT advocate until certain preconditions were met, the arbitration did not go forward.   Id.   In addition, along with his February 23 Letter, Nash has attached an e-mail from his attorney in the 2013 hearing to a DOE attorney, wherein Nash's attorney confirmed that he had been provided with all discovery.   We do not view either document as relevant to Nash's claims of discrimination, nor do we infer from either of them any of the inferences of collusion that Nash asks us to draw.
Finally, although Nash appears to suggest that regulations issued by the DOE in 2002 meant that he was entitled to representation only by a union advocate, rather than by counsel, in the 2013 hearing, see ECF No. 26 at 2, he also refers to his counsel at that hearing as his "privately retained attorney," Pl. Opp. at 5, and provides no basis for this Court to conclude that his representation at the hearing was deficient.

**CONCLUSION**

In summary, the City is an improper defendant, the NYSHRL and NYCHRL claims are time-barred, and the Title VII and ADEA claims are barred by collateral estoppel. We decline to exercise supplemental jurisdiction over the remaining state law claim. Therefore, defendants' motion to dismiss (Doc. No. 15) is granted and the Complaint is dismissed. The Clerk of Court shall enter judgment.

**SO ORDERED.**

Dated:    New York, New York
          September 22, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on
September 30, 2016, to the following:

**Plaintiff**

Luke Nash
73 N. Henry Street 3B
Brooklyn, NY 11222